Filed 03/26/19　　　　Case 17-02205　　　Itas　　　　　　　　　　　　Doc 43

```
            FILED
         MAR 26 2019
    UNITED STATES BANKRUPTCY COURT
    EASTERN DISTRICT OF CALIFORNIA
```

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

In re:　　　　　　　　　　　　　　) Case No. 17-25335-B-7
　　　　　　　　　　　　　　　　　)
RAJPAL SINGH CHATHA and　　　　　) Adversary No. 17-2205
TARANJIT KAUR CHATHA,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Debtor(s).　　　　　　)
─────────────────────────────────)
WESTATES HOLDINGS, LLC, a　　　　)
Delaware limited liability　　　　)
company,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff(s),　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
RAJPAL SINGH CHATHA and　　　　　)
TARANJIT KAUR CHATHA,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendant(s).　　　　　　)
─────────────────────────────────)

**MEMORANDUM DECISION AFTER TRIAL**

**Introduction**

　　A trial in this adversary proceeding was held on February 4, 2019. Appearances on behalf of plaintiff Westates Holdings, LLC, and defendants Rajpal Singh Chatha and Taranjit Kaur Chatha were noted on the record.[1] The court takes judicial notice of the

───────────────────

[1] Because both defendants and their son, Simranjit Chatha, who also plays a role in this litigation share the same surname, when necessary, the court will refer to these individuals by their first name for ease of reference. No disrespect is intended.

docket in this adversary proceeding and in the defendants' chapter 7 case, No. 17-25335.  See Fed. R. Evid. 201.  Findings of fact and conclusions of law are set forth below.  See Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052.

**Jurisdiction**

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (J) and (O).  Venue is proper pursuant to 28 U.S.C. § 1409.

**Findings of Fact**

Defendants are debtors in the parent chapter 7 case. Defendants filed a voluntary chapter 7 petition on August 11, 2017 (the "Petition Date").

Plaintiff objects to defendants' discharge under 11 U.S.C. § 727(a).  The complaint that commenced this adversary proceeding was timely-filed on November 13, 2017.  It alleges claims for relief under § 727(a)(2)(A) in the first claim for relief, § 727(a)(2)(B) in the second claim for relief, § 727(a)(3) in the third claim for relief, § 727(a)(4)(A) in the fourth claim for relief, and § 727(a)(5) in the fifth claim for relief.

Plaintiff introduced substantial evidence regarding defendants' finances and financial transactions, defendants' properties, and entities that the defendants formed, owned, and operated over a span of nearly a decade.  The court focuses on three matters for purposes of this decision: (i) the omission of a checking account from the initial and amended Statements of

Financial Affairs ("SOFAs"); (ii) the omission of the full extent of the defendants' interest in an entity by the name of Brightside Hospitality, LLC ("Brightside") from the initial and amended Schedules and SOFAs;[2] and (iii) the defendants failure to satisfactorily explain their finances and financial dealings generally and, in particular, their failure to explain the consideration, if any, received in exchange for the transfer of their real property located at 513 B Street, Apt. #1, Marysville, California ("513 B Property") to Pacific Coast Ventures, LLC ("PCV"), and thereafter for the transfer of their membership interests in PCV to Simranjit. As further explained below, evidence regarding these matters supports (and warrants) a denial of the defendants' discharge in their chapter 7 case.

Initially, the court finds that the defendants are sophisticated business people. Rajpal has a Bachelor of Arts degree in Economics from Arya College in India and a Bachelor of Science degree in Business Administration from California State University, Sacramento. Rajpal also has well over a decade of experience in the hospitality industry. That experience includes, but is not limited to, setting financial goals, budgeting, policies, franchise relations, renovations, marketing, employee relations, information technology, and dealing with

---

[2]This is the entity that purchased and operated a 72-room La Quinta Inn ("La Quinta") in Mansfield, Texas. The significance of Brightside and the La Quinta are explained in further detail below. The name of this entity changed several times from and after its formation. For purposes of clarity, however, the court will refer to the entity as "Brightside" throughout this decision.

community relations.

For over a decade defendants have formed, owned, and operated numerous Texas and California limited liability companies and corporations for personal and business-related purposes. Defendants served as managers, officers, directors, and agents for service of process of those entities.

Defendants purchased their first business as early as 1995. Defendants also purchased and managed commercial properties in Marysville, California, and a residential property in Lodi, California. In November of 2008 Brightside purchased the La Quinta for approximately $5,000,000.00. The transaction also involved an assumption of existing indebtedness.

Despite their business savvy, on cross-examination, defendants recalled very little and were unable (or more accurately unwilling) to testify about basic matters concerning their finances, financial condition, properties, and business entities. Defendants generally could not (or more accurately did not want to) recall where they formally resided, why they claimed multiple residences, why they listed multiple and differing residences on their tax returns, how they acquired and transferred several pieces of real property to Simranjit, how liens were created and satisfied on their real properties, and the purpose and function of many of their California and Texas entities.

In particular, defendants were unable to explain why the initial and amended SOFAs omitted a Chase checking account which they held and used within the year preceding the Petition Date. Defendants also failed to explain why the initial and amended

Schedules and SOFAs did not fully disclose the extent of an interest they apparently retained in Brightside following its purported sale to Simranjit. And defendants were unable to explain the extent of consideration received for the transfer of the 513 B Property to PCV and thereafter the transfer of their interests in PCV to Simranjit. As to each of these matters, and those referenced generally above, defendants repeatedly testified that they did not know, they did not remember, or they could not recall. Given their level of business sophistication, defendants' feigned ignorance is not believable and their testimony regarding those matters is largely not credible.[3]

### A. The Initial and Amended Schedules and SOFAs

Defendants filed Schedules with their chapter 7 petition. Schedule A/B lists no bank or other financial accounts. In response to Question No. 17 which requires disclosure of "[d]eposits of money" in any "[c]hecking, savings, or other financial accounts" defendants answered "No[.]" In response to Question No. 27 which requires disclosure of "[l]icenses,

---

[3] Consistent with what the court perceives as defendants' feigned ignorance and therefore willful failure to testify about their finances and financial and business dealings, defendants also failed to provide plaintiff with documents covered by a pretrial document request. In response to the request, defendants produced two documents. Independently, however, the chapter 7 trustee managed to obtain hundreds, if not thousands, of pages of documents covered by plaintiff's request. Many of the documents were admitted for their full probative value without objection by the defendants. The documents paint a picture of knowledge and personal involvement by the defendants much greater than they were willing to testify about and further support the court's conclusion that defendants' ignorance was feigned and their testimony largely not credible.

franchises, and other general intangibles" defendants answered "No[.]" In response to Question No. 35 which requires disclosure of "[a]ny financial assets you did not already list" defendants answered "No[.]" In response to Question No. 37 which requires disclosure of "any legal interest in any business-related property" defendants answered "No[.]" And in response to Question No. 53 which requires disclosure of "other property of any kind you did not already list" defendants answered "No[.]"

Defendants filed an amended Schedule A/B on December 14, 2017. Defendants' answers to Question Nos. 17, 27, 35, 37, and 53 on the amended Schedule A/B all remained "No[.]"

Defendants also filed a SOFA with the petition. Question No. 20 of the SOFA asks: "Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?" In response to that question, defendants answered "No[.]" In response to Question No. 27 which asks "[w]ithin 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?[,]" defendants identified "March on Hospitality" (fka Brightside) from "2007-2014."

Defendants filed an amended SOFA on December 14, 2017. The answer to Question No. 20 on the amended SOFA remained "No[.]" As a result of an apparent change in the entity's name, the response to Question No. 27 changed from "March on Hospitality" to "Brightside Hospitality."

### 1. Defendants' Chase Checking Account

Despite the defendants' sworn statements in the SOFA that they did not have any financial accounts within the year preceding the Petition Date, defendants did in fact have a personal checking account with Chase ending in 3311. Defendants' Chase checking account was active through at least late September of 2016. Deposits into and withdrawals from the account for the first nine months of 2016 totaled $24,390.00.

### 2. Brightside & La Quinta

Rajpal, as the sole member, formed Chatha Hospitality, LLC, as a Texas limited liability company on April 11, 2007. On April 13, 2007, Rajpal changed Chatha Hospitality's name to Brightside Hospitality, LLC. Brightside thereafter purchased the La Quinta in November 2008. Tax records confirm that Rajpal remained Brightside's sole member through at least 2015.

Meanwhile, in September of 2014 Brightside filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas and through that proceeding changed its name on or about May 13, 2015, to March on Hospitality, LLC, a Texas limited liability company. As the entity's managing member, Rajpal signed the Certificate of Amendment changing the name which thereafter was filed with the Texas Secretary of State.

The Texas bankruptcy court confirmed Brightside's (as renamed) fourth amended plan on or about June 1, 2015. Among other things, Brightside's confirmed chapter 11 plan provided for the cancellation of the defendants' interest in Brightside and the transfer of 100% of that interest to Simranjit in exchange

for a $60,000.00 contribution from Simranjit. Taranjit testified that she provided Simranjit with the $60,000.00 payment and that she obtained funds for that payment from another family member.

The court is convinced that Simranjit was a straw-purchaser of the defendants' equity interest in Brightside.[4] Stated more bluntly, the court is convinced that defendants ignored the Texas bankruptcy court's confirmation order cancelling their interest in Brightside and thereafter retained and enjoyed a management and beneficial interest at least through January 4, 2018, when Rajpal's membership interest in Brightside was formally terminated and 100% of the entity effectively transferred to Simranjit.[5] In addition to the membership interest termination

---

[4]The court takes judicial notice that Texas and California are community property states. See Fed. R. Evid. 201.

[5]The January 4, 2018, document formally terminating Rajpal's membership interest recorded with the Texas Secretary of State references an entity no. 800800278 with a formation date of April 11, 2007. That entity number and date correlate with the document that Rajpal filed with the Texas Secretary of State in April of 2007 to form Chatha Hospitality, LLC, as thereafter renamed Brightside and March on Hospitality. Official records thus reflect that Rajpal remained a member of Brightside continuously from its formation in April of 2007, on the Petition Date, and until his membership interest was formally (and officially) terminated for Simranjit's benefit on January 4, 2018.
To the extent that Rajpal retained an interest in Brightside on the Petition Date, he held a membership interest in the entity that, on the Petition Date, owned the La Quinta. Tarrant County (Texas) Recorder records reflect that four days after the Petition Date, on August 15, 2017, a General Warranty Deed, document no. D217187705, signed by Simranjit, conveying "Lot 5R-1, in MANSFIELD DEBBIE LANE ADDITION" from Brightside to a newly formed entity, Summerfest Hospitality, LLC, a Texas limited liability company, was recorded. According to the Tarrant County (Texas) Assessor "MANSFIELD DEBBIE LANE ADD Lot 5R1" corresponds with an address at 1503 Breckenridge Road, Mansfield, Texas,

date, the court reaches this conclusion based on the use of family funds for Simranjit's $60,000.00 contribution and the substantial control that Rajpal continued to exercise over Brightside's finances and financial matters between June 2015 and at least September 2017.

From at least June of 2015 through November of 2015 Rajpal remained an authorized signatory on a La Quinta Frost Bank account ending in 4444. Rajpal signed checks drawn on that account to purchase assets for the entity, pay the entity's expenses and insurance, transfer funds to a Brightside account ending in 8508 maintained at Stanford Federal Credit Union, and pay U.S. trustee fees.

Between August 2015 and February 2016, Rajpal remained an authorized signatory, and signed checks drawn, on a La Quinta Chase Bank account ending in 1408. Rajpal also made a number of large prepetition withdrawals from this account totaling $174,000.00, including: $25,000.00 on May 29, 2015; $99,000.00 on June 8, 2015; and $50,000.00 on July 18, 2015. He made another substantial withdrawal of $145,718.95 from the account postpetition on September 29, 2017. In total, Rajpal withdrew $319,718.95 from this La Quinta account acting in the name of Brightside. The nature and purpose of the withdrawals were not explained.

B. <u>513 B Property and PCV</u>

PCV is a California limited liability company. Defendants formed the entity in June of 2012 and, at about the same time, which is the address of the La Quinta.

1  transferred fee title to the 513 B Property to the entity with no
2  record of any consideration.  The 513 B Property is an apartment
3  building also used for commercial purposes.  It is zoned as "spot
4  retail" and classed as commercial according to county records.
5      Defendants each transferred 50% of their interest in PCV to
6  Simranjit in October of 2012.  Defendants each transferred their
7  remaining 50% interest in PCV to Simranjit in July of 2013.  The
8  only consideration identified for the defendants' transfer of
9  their interests in PCV to Simranjit is the latter's purported
10 agreement to take over, renovate, and manage the property.
11 However, when questioned on cross-examination, defendants were
12 unable to identify or explain how or to what extent Simranjit
13 "managed" or "renovated" the 513 B Property in exchange for the
14 defendants' PCV interests.  Defendants were also unable to
15 produce records to establish the extent of Simranjit's purported
16 consideration, if any.

**Conclusions of Law**

A.   Section 727(a)(4)(A)

Section 727(a)(4)(A) states that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account."  The elements of a § 727(a)(4)(A) claim are: (i) a false oath by the debtor in or in connection with the case; (ii) the oath related to a material fact; (iii) the oath was made knowingly; and (4) the oath was made fraudulently.  Retz v. Samson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010) (internal quotations and citations omitted).

1. **First and Third Elements: Defendants knowingly made false oaths in and in connection with their chapter 7 case.**

The court focuses on the defendants' initial and amended Schedules and SOFAs. Schedules and statements of financial affairs are signed and filed under penalty of perjury. See Fed. R. Bankr. P. 1008. "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." Retz, 606 F.3d at 1196 (quoting Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd and adopted, 578 F.3d 1167 (9th Cir. 2009)).

Inasmuch as defendants' Chase checking account existed and was active through the latter part of 2016, defendants undoubtedly were aware of the account when they filed the initial and amended SOFAs. Yet, the account is not disclosed in either. Additionally, given the level of financial control that Rajpal enjoyed and exercised over Brightside from and after June of 2015, which included acting in the name of the entity within the year preceding the Petition Date and over a month thereafter, defendants knew they retained an interest in Brightside much greater than the interest disclosed for the first time in the amended SOFA.[6]

Defendants deliberately and consciously signed the initial and amended Schedules and SOFAs knowing they omitted the Chase checking account and the true extent of their Brightside

---

[6]The amended SOFA states that Rajpal's interest in Brightside terminated in 2014 which itself is not accurate.

interest. The omissions are therefore false oaths by the defendants which were knowingly made. Accordingly, the first and third elements of § 727(a)(4)(A) are satisfied.

### 2. Fourth Element: Defendants' false oaths were fraudulently made.

Once it is shown that a false oath was knowingly made it must also be shown that it was fraudulently made. Retz, 606 F.3d at 1198; see also Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 64 (9th Cir. BAP 1999). A debtor's fraudulent intent may be established by circumstantial evidence or by inference drawn from a course of conduct. Retz, 606 F.3d at 1199 (citing Devers v. Bank of Sheriden, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985)). A court is likely to find the requisite fraudulent intent where there is a pattern of falsity, reckless indifference to and disregard for the truth, a failure to take advantage of an opportunity to clear up omissions and inconsistencies, and the size or nature of an undisclosed asset suggests it is something that the debtor might not want to disclose. Id. at 1198-99 (citing Khalil, 379 B.R. at 174); see also Trainor v. Evans (In re Evans), 2017 WL 3429023, *4-5 (9th Cir. BAP 2017) (reaffirming Khalil). Evidence presented at trial supports a finding of fraudulent intent.

Defendants knowingly omitted the Chase checking account and the full extent of their Brightside interest from the initial Schedules and SOFA. That exhibits a reckless indifference to and disregard for the truth. See Stamat v. Neary, 635 F.3d 974, 982 (7th Cir. 2011) (reckless disregard shown where debtors who failed to disclose business interests were highly educated and

had significant business experience).

Several months later defendants retained new bankruptcy counsel and amended the Schedules and SOFA. Like the initial version of those documents, the Chase checking account and the full extent of the defendants' Brightside interest were again knowingly omitted from the amended documents. That is a pattern of falsity and a failure by the defendants to take advantage of an opportunity to clear up their prior inconsistencies.[7]

The defendants' Brightside interest became property of the estate which vested in the trustee on the Petition Date. Fursman v. Ulrich (In re First Fire Protection, LLC), 440 B.R. 820, 830 (9th Cir. BAP 2010) (under Arizona law, full extent of debtors' membership interest in limited liability company is property of the estate); Fresno Rock Taco, LLC v. National Sur. Ins. Corp., 2015 WL 135720, *13 & n.32 (E.D. Cal. 2015) (finding First Protection analysis applicable to California limited liability company due to identity of statutes). And because Brightside still owned the La Quinta on the Petition Date, that makes the defendants' Brightside interest a potentially valuable asset in that it would give the trustee an ownership interest in the entity that owned the La Quinta. Moreover, the La Quinta appears be a family-run enterprise which the defendants apparently want to keep in the family. So in those respects, the potential value

---

[7]This is particularly true given that in the period between the filing of the initial Schedules and SOFA, *i.e.*, August 11, 2017, and the filing of the amended Schedules and SOFA, *i.e*, December 14, 2017, on September 29, 2017, Rajpal withdrew an additional $145,718.95 from Brightside's account signing the withdrawal slip under Brightside authority.

- 13 -

and nature of the defendants' Brightside interest make it something that the defendants would not want to fully disclose in order to protect and preserve it for Simranjit's benefit.

In short, plaintiff has established fraudulent intent with regard to their false oaths knowingly made. The Fourth element of § 727(a)(4)(A) is therefore satisfied.

### 3. Second Element: Defendants' False Oath is Material.

Fraudulent omissions must also be material. Materiality is broadly defined and a false statement is material if it bears any relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. Retz, 606 F.3d at 1198; see also Wills, 243 B.R. at 62. Thus, "[e]ven if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition." Wills, 243 B.R. at 63 (quoting 6 King, Collier on Bankruptcy ¶ 727.04[1][b])). That is so because "[t]he fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Id.

The defendants' omission of the Chase checking account and the Brightside interest from the initial and amended Schedules and SOFAs clearly relates to their assets, property, and business dealings. By omitting the Chase checking account from the

initial and amended SOFAs the defendants provided the trustee and creditors with an inaccurate picture of their financial condition and prevented them from learning that, in the months before the bankruptcy filing, the defendants had access to thousands of dollars which were used to pay expenses. See e.g., Taylor v. Good (In re Taylor), 720 Fed. Appx. 413, 414-15 (9th Cir. 2018) (so stating). The flow of money in and out of an account is also relevant to the discovery of concealed assets. Id. (so stating). For these reasons, the court concludes that the omission of the Chase checking account from the initial and amended SOFAs is material.

The potential value and nature of the defendants' Brightside interest, discussed above, speaks for itself as to its materiality in relation to its omission from the initial and amended Schedules and SOFAs.

In short, defendants' knowing and fraudulent false oaths are material. The second element of § 727(a)(4)(A) is therefore satisfied.

### 4. Section 727(a)(4)(A) Conclusion

The court is persuaded that defendants knowingly and fraudulently, in and in connection with their bankruptcy case, made false oaths in the initial and amended Schedules and SOFAs. Therefore, the defendants will be denied a discharge in their chapter 7 case pursuant to 11 U.S.C. § 727(a)(4)(A).

### B. Section 727(a)(5)

Section 727(a)(5) states: "The court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under

this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Section 727(a)(5) is broadly drawn and gives the bankruptcy court power to decline to grant a discharge when the debtor does not adequately explain a shortage, loss, or disappearance of assets. Seror v. Lopez (In re Lopez), 532 B.R. 140, 150 (Bankr. C.D. Cal. 2015) (citation omitted).

    Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (i) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (ii) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (iii) the bankruptcy pleadings or statement of financial affairs do not reflect an adequate explanation for the disposition of the assets. Retz, 606 F.3d at 1205. Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. Id. (citing Devers, 759 F.2d at 754).

    Plaintiff has established a prima facie case under § 727(a)(5). Defendants' testimony regarding their finances and properties was vague and evasive. Defendants owned real property, *i.e.*, the 513 B Property, and had possession of large amounts of cash, *i.e.*, Rajpal's cash withdrawals from Brightside's account, within a period of time not too remote from the Petition Date. Defendants failed to satisfactorily explain the extent of the consideration purportedly received for the transfer of the 513 B Property to PCV and the subsequent transfer of their interest in PCV to Simranjit. There also was no

satisfactory explanation as to what Rajpal did with the hundreds of thousands of dollars he withdrew from Brightside's La Quinta account, both pre- and postpetition. Defendants' testimony that they do not know, they do not recall, and could not explain these (and the other matters referenced generally hereinabove) are tantamount to no explanation at all. And even if testimony of that nature could be considered to be an explanation, it certainly is not one satisfactory to this court. See Lopez, 532 B.R. at 140 (vague, indefinite, and uncorroborated explanations are not satisfactory).

In short, defendants have not met their burden of explaining, before the entry of a discharge, the loss or insufficiency of assets to satisfy their obligations. Therefore, defendants' discharge in their chapter 7 case will alternatively be denied pursuant to 11 U.S.C. § 727(a)(5).

C. Remaining Claims

There is insufficient evidence to permit the court to conclude that defendants transferred, removed, mutilated, destroyed or concealed property of the debtor or the estate with the intent to hinder, delay, or defraud a creditor or the trustee. Although assets and related transactions may not have been fully or accurately disclosed, they were nevertheless disclosed. Incomplete or inaccurate disclosure lends itself more to a § 727(a)(4)(A) claim rather than claims under §§ 727(a)(2)(A)-(B).

Additionally, based on the voluminous documents and records that the chapter 7 trustee was apparently able to obtain and which he provided to the plaintiff, there is no basis for a claim

under § 727(a)(3).

**Conclusion**

For all the foregoing reasons,

(1) judgment on the Fourth and Fifth Claims for Relief in the Complaint will be entered for the plaintiff and against the defendants, and defendants shall be denied a discharge in their chapter 7 case.

(2) judgment on the First, Second, and Third Claims for Relief will be entered for the defendants and against the plaintiff.

The continued trial set for March 26, 2019, at 9:30 a.m. shall be vacated.

A separate judgment will issue.

Dated: March 26, 2019.

UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Walter R. Dahl
2304 N St
Sacramento CA 95816-5716

W. Steven Shumway
3400 Douglas Blvd., Suite 250
Roseville CA 95661